UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAGJIT S.,[1]

        Petitioner,

        v.

WARDEN OF THE MESA VERDE
DETENTION CENTER, et al.,

        Respondents.

No. 1:26-cv-02136-TLN-CSK

[A# 246-776-219]

**ORDER**

       This matter is before the Court on Petitioner Jagjit S.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed an opposition. (ECF No. 8.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND[2]

This matter arises out of Petitioner's challenge to his immigration detention.  Petitioner is a noncitizen who entered the United States to seek asylum on March 28, 2023.  (ECF No. 1 at 2.) At first, Petitioner was detained by immigration authorities, but he was later released an Order of Release on Recognizance on April 1, 2023.  (ECF No. 8-2 at 1.)

Since his release, Petitioner has applied for asylum.  (ECF No. 1 at 2.) He has established strong ties in his community.  (*Id.* at 13.)  Petitioner also asserts he timely and consistently appeared for all hearings in immigration court.  (*Id.* at 11.)  Respondents do not contend that Petitioner violated his conditions of release.  (*See* ECF No. 8.) Additionally, Petitioner asserts he has no history of being a public threat and has a limited criminal history.[3]  (ECF No. 1 at 12.) Indeed, Respondents do not claim that Petitioner is a danger to the community.  (*See* ECF No. 8.)

Nevertheless, on February 27, 2026, ICE detained Petitioner during a check-in.  (ECF No. 8-1 at 2.)  During his time in detention, Petitioner requested a bond hearing, which was denied. (ECF No. 1 at 2.)  Petitioner has now been detained for over a month.

Petitioner now challenges the lawfulness of his civil detention without a bond hearing. (ECF No. 1.)

## II.   STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has

---

[2]   The facts are not disputed.

[3]   Petitioner was arrested in 2025 and the charges remain pending.  (ECF No. 1 at 2.) The parties do not provide this Court with information about the arrest or the charges pending against Petitioner.  Neither party argues that Petitioner is a danger to the community.

served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III.    ANALYSIS**

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.[4] (ECF No. 1 at 12–15.) The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas,* 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A.    Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24,

---

[4]    Petitioner also claims Respondents violated the Immigration and Nationality Act ("INA") and the Administrative Procedure Act. (ECF No. 1 at 15.) Because the Court finds relief warranted under the Fifth Amendment claim, it declines to address additional claims seeking the same relief.

2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom after he was released on his own recognizance from immigration custody in 2023. Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. Petitioner asserts that he has complied with all immigration requirements. (ECF No. 1 at 11.) It appears Petitioner was arrested because of his compliance with immigration requirements as he was detained during a check-in at an ICE office. (*See* ECF No. 8-1 at 2.) Indeed, Respondents do not contend that Petitioner violated the conditions of his release. (*See* ECF No. 8.) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his immigration proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Thus, Petitioner has a liberty interest protected by due process. The Court next turns to the procedural safeguards that were owed to Petitioner.

### B. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

4

the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. The nearly three years Petitioner spent at liberty underscores the gravity of its loss. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Despite his interest in maintaining his liberty, Petitioner has now been detained for over a month without any opportunity to be heard as to the justification of his detention. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any process, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, Petitioner is not subject to a final order of removal. Petitioner contends he is not a danger or a flight risk, and Respondents do not dispute that contention. Indeed, it seems Petitioner was complying with a scheduled ICE appointment at the time of his detention. Without any showing by Respondents of a legitimate interest to detain Petitioner, the Court finds there is a serious likelihood Petitioner may be erroneously deprived of his liberty interest. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). The cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for Respondents. Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal. It would also be less of a fiscal and administrative burden for Respondents to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents were required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Respondents have not provided any substantive opposition to the contrary, nor do they argue that Petitioner should be a "special case."

Respondents did not provide a pre-deprivation hearing. Nor have Respondents provided a post-deprivation hearing during Petitioner's detention. Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

### IV.   CONCLUSION

Petitioner is detained in violation of the Constitution and he must be released. Accordingly, IT IS HEREBY ORDERED:[5]

1. The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

2. Respondents must IMMEDIATELY RELEASE Petitioner JAGJIT S. (A# 246-776-219)

---

[5] Petitioner also seeks an award of attorney's fees and costs under the Equal Access to Justice Act. (ECF No. 1 at 17.) The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.

6

from custody under the same conditions he was released prior to his current detention and must return all Petitioner's documents and possessions at the time of release. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3. **Respondents must file a notice of compliance with this Order by April 7, 2026.**

4. To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED and RESTRAINED from re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

5. **The Clerk is directed to serve the Mesa Verde Detention Facility with a copy of this Order.**

6. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: April 6, 2026

_____
Troy L. Nunley
Chief United States District Judge

7